William CASSADY, Plaintiff,

v.

AMERICAN COMMERCIAL BARGE LINE COMPANY and Inland Tugs Company, Defendants.

Civ. A. No. 70-618.

United States District Court, W. D. Pennsylvania.

Nov. 12, 1970.

Hymen Schlesinger, Pittsburgh, Pa., for plaintiff.

Giles J. Gaca, Thomson, Rhodes & Grigsby, Pittsburgh, Pa., for defendants.

## OPINION

WEIS, District Judge.

The wandering nature of a seaman's occupation is not unexpectedly reflected in the varied forums in which he commences litigation. However, just as a seaman is conscious of the absolute necessity of having his vessel navigate in established channels to insure safe passage, so must his litigation follow defined and regulated patterns.

The defendants in this case have filed a motion under 28 U.S.C. § 1404(a), alleging that the plaintiff has indeed diverted this litigation from its proper location in Parkersburg, West Virginia to Pittsburgh, Pennsylvania in the Western District of Pennsylvania. It asks that the plaintiff's case be floated from this district down the Ohio River to the Northern District of West Virginia at Parkersburg, which is within a few miles of the plaintiff's residence, is the city where the attending physician resides, is the location of the hospital to which the plaintiff repaired for necessary overhaul after his accident, and is in a district where admittedly both the American Commercial Barge Line and the Inland Tugs Company, the defendants, do business and hence may be served.

A companion motion to strike improper service was filed on behalf of the Inland Tugs Company, which is the employer of the plaintiff, the owner of the vessel and presumably the most concerned defendant. It is alleged by In-

land that it cannot properly be served in Pittsburgh.

The slender lines that the plaintiff asserts assure a proper mooring here in the Western District of Pennsylvania are the facts that his counsel lives in Pittsburgh and that several experts, who allegedly may be necessary to establish liability on this relatively simple happening, are from this area. We feel that these considerations are not sufficiently strong since it appears that experts of the type involved here may as easily be found in Parkersburg, West Virginia as in Pittsburgh, Pennsylvania and if not, they appear to be the type of witnesses who would be available to travel to West Virginia if that should become necessary.[1]

It is true that the plaintiff's choice of venue is to be given substantial weight and that the burden is upon the defendant to overcome the initial choice, but that is only one of a number of factors.[2]

The pertinent statute (28 U.S.C. § 1404(a)) says:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The list of crew members aboard the vessel at the time of the alleged accident on December 7, 1959 show addresses of various seamen in Indiana, West Virginia, Ohio, South Carolina and Kentucky. None are from Pennsylvania.

The accident is said to have occurred on the Ohio River in the vicinity of Parkersburg, West Virginia.

Plaintiff claims a second accident occurred when he was aboard the M–V RW Naye on April 14, 1970, when it was on the lower Mississippi River between Baton Rouge and Francisville, in Louisiana. The defendant denies that any such incident occurred, that medical treatment was secured by the plaintiff or that there was any hospitalization. The list of crew members for the Naye on April 14, 1970 lists addresses of individuals in Missouri, Kentucky, Texas, and Ohio. Again, no connection at all is shown with Western Pennsylvania.

It appears that the convenience of at least some of the potential witnesses might be served by having the trial in West Virginia and the convenience of none would be served by having the trial in Pittsburgh, Pennsylvania.

In the circumstances of this case it is not inappropriate to note regretfully that the trial list of civil cases in this district is not current while it is so in the Northern District of West Virginia. It is thus a reasonable assumption that the plaintiff's case will be reached more quickly if the matter is transferred to West Virginia and the situation of other litigants in this court will be improved by dispatch of Cassady's case to the district where it really belongs. The transfer will result in no injustice to the plaintiff and will, in fact, result in expedition of his claim.[3]

As a condition to transfer, however, it seems only reasonable that the defendants agree to waive any questions of service of process and proceed to dispose of the litigation in West Virginia upon its merits. The Order to Transfer, therefore, will be granted upon the condition that the defendants advise the court in writing of their willingness to proceed without any further preliminary delay on the question of service in the Northern District of West Virginia, Parkersburg, West Virginia.

1. Wilson v. Ohio River Company, 211 F. Supp. 666 (W.D.Pa.).

2. In All States Freight v. Modarelli, 196 F.2d 1010, 1011, Judge Goodrich said, "The purpose of the limitation is clearly to make the inevitably uncomfortable [for the litigant], judicial process cheaper and more convenient and, if possible, more prompt."

3. See Pontes v. Calmar Steamship Corp., 256 F.Supp. 495 (E.D.Pa.) ; Frankel v. Alcoa Steamship Co., 198 F.Supp. 266 (E.D.Pa.).

We find no exceptional circumstances in this case to justify granting plaintiff's request for payment of his counsel fees by the defendants.